**No. 22-12217**

# In the United States Court of Appeals
# for the Eleventh Circuit

TAMARAH C. LOUIS and EMMANUEL LOUIS, JR., individually, and on
behalf of all others similarly situated,
*Plaintiffs-Appellants*,

v.

BLUEGREEN VACATIONS UNLIMITED, INC., a Florida corporation and
BLUEGREEN VACATIONS CORPORATION, a Florida corporation,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Florida
Case No. 21-cv-61938 (The Hon. Rodolfo A. Ruiz II)

## BRIEF OF PLAINTIFFS-APPELLANTS

JANET R. VARNELL
BRIAN W. WARWICK
MATTHEW T. PETERSON
ERIKA R. WILLIS
VARNELL & WARWICK, P.A.
1101 E Cumberland Ave, Suite 201H
Tampa, FL 33602
(352) 753-8600

IRA RHEINGOLD
NATIONAL ASSOCIATION OF
CONSUMER ADVOCATES
1215 17th Street NW, 5th Floor
Washington, DC 20036
(202) 452-1989

JENNIFER D. BENNETT
GUPTA WESSLER PLLC
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 573-0336
*jennifer@guptawessler.com*

MATTHEW W.H. WESSLER
GUPTA WESSLER PLLC
2001 K Street NW, Suite 850 North
Washington, DC 20006
(202) 888-1741

November 14, 2022                           *Counsel for Plaintiffs-Appellants*

Case No. 22-12217; Louis v. Bluegreen

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26(b) and Eleventh Circuit Rule 26.1, Appellants hereby disclose the following list of known persons, associated persons, firms, partnerships or corporations that have a financial interest in the outcome of this case, including all subsidiaries, conglomerates, affiliates, parent corporations, and other identifiable legal entities related to a party in this case:

Bennett, Jennifer D.

Bluegreen Vacations Corporation

Bluegreen Vacations Unlimited, Inc.

Gupta Wessler PLLC

Louis, Jr., Emmanuel G.

Louis, Tamarah C.

Mead, Grace L.

Nathan, Andrea N.

National Association of Consumer Advocates

Onorati, Joseph J.

Peterson, Matthew T.

Rheingold, Ira

Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.

Varnell & Warwick, P.A

Case No. 22-12217; Louis v. Bluegreen

Varnell, Janet R.

Warwick, Brian W.

Wessler. Matthew W.H.

Willis, Erika R.

      Pursuant to 11th Cir. R. 26.1-3(b), Bluegreen Vacations Holding Corporation

(NYSE: BVH), is the parent company for Defendant-Appellee.


Dated: November 14, 2022                    */s/ Jennifer D. Bennett*
                                         Jennifer D. Bennett

## STATEMENT REGARDING ORAL ARGUMENT

Tamarah C. Louis and Emmanuel Louis, Jr. respectfully request an opportunity to present oral argument in this appeal. This case presents an important issue critical to the Military Lending Act and contract law generally: Do parties purportedly obligated to pay money under a void contract have standing to sue to rescind that contract and to seek restitution of any payments already made? Oral argument will assist the Court in resolving this important legal issue.

# TABLE OF CONTENTS

Statement regarding oral argument ........................................................... i

Table of citations ...................................................................................... iii

Introduction ............................................................................................... 1

Jurisdictional statement ............................................................................ 2

Statement of the issue ............................................................................... 2

Statement of the case ................................................................................ 3

     I.    Statutory background ....................................................... 3

     II.    Factual background ........................................................... 7

          A.    Bluegreen pressures the Louises to purchase a
              membership in Bluegreen Vacation Club and to
              finance that purchase with a loan from Bluegreen. ..................... 7

          B.    The Louises sue for rescission of Bluegreen's illegal
              loan contract and restitution. ................................................... 10

Summary of argument ............................................................................. 11

Standard of review .................................................................................. 12

Argument ................................................................................................. 12

     I.    Making payments you do not owe is a textbook concrete
         injury. ............................................................................. 13

     II.    A plaintiff must allege harm traceable to the defendant,
         not to the alleged legal violation. ... ............................... 17

Conclusion .............................................................................................. 20

# TABLE OF CITATIONS

## Cases

*Chiles v. Thornburgh,*
  865 F.2d 1197 (11th Cir. 1989) ................................................................19

*Collins v. Yellen,*
  141 S. Ct. 1761 (2021) ...............................................................................11, 18

*Congress & Empire Spring Co. v. Knowlton,*
  103 U.S. 49 (1880) .....................................................................................16

*Cox v. Community Loans of America Inc.,*
  625 F. App'x 453 (11th Cir. 2015) ..........................................................16

*Czyzewski v. Jevic Holding Corp.,*
  137 S. Ct. 973 (2017) .................................................................................14

*Danvers Motor Co. v. Ford Motor Co.,*
  432 F.3d 286 (3d Cir. 2005) .....................................................................14

*Debernardis v. IQ Formulations, LLC,*
  942 F.3d 1076 (11th Cir. 2019) ...............................................................14

*Desert Citizens Against Pollution v. Bisson,*
  231 F.3d 1172 (9th Cir. 2000) .................................................................19

*Dubuisson v. Stonebridge Life Insurance Co.,*
  887 F.3d 567 (2d Cir. 2018) .....................................................................15

*Duke Power Co. v. Carolina Environmental Study Group, Inc.,*
  438 U.S. 59 (1978) ..................................................... 11, 18, 19, 20

*Dunphy v. Ryan,*
  116 U.S. 491 (1886) ...................................................................................14

*Global Aerospace, Inc. v. Platinum Jet Management, LLC,*
  488 F. App'x 338 (11th Cir. 2012) ..........................................................15

*Graham v. Catamaran Health Solutions LLC,*
  940 F.3d 401 (8th Cir. 2017) ...................................................................15

*Griffin v. Coca-Cola Refreshments USA, Inc.,*
    989 F.3d 923 (11th Cir. 2021) ...................................................................14

*Hallums v. Infinity Insurance Co.,*
    945 F.3d 1144 (11th Cir. 2019) .................................................................15

*Harris v. Evans,*
    20 F.3d 1118 (11th Cir. 1994) ...................................................................13

*London v. Wal-Mart Stores, Inc.,*
    340 F.3d 1246 (11th Cir. 2003) ................................................... 14, 15, 18

*McAllister v. Drapeau,*
    92 P.2d 911 (Cal. 1939) .............................................................................17

*McGowan v. Maryland,*
    366 U.S. 420 (1961) ...................................................................................14

*Moody v. Holman,*
    887 F.3d 1281 (11th Cir. 2018) .................................................................18

*MSPA Claims 1, LLC v. Tenet Florida, Inc.,*
    918 F.3d 1312 (11th Cir. 2019) .................................................................14

*Noblitt v. Bluegreen Vacations Unlimited, Inc.,*
    2019 WL 7290474 (E.D. Tenn. Mar. 20, 2019) .........................................8

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ...................................................................................16

*St. Louis, V. & T.H.R. Co. v. Terre Haute & I.R. Co.,*
    145 U.S. 393 (1892) ..............................................................................16, 17

*Taylor v. Polhill,*
    964 F.3d 975 (11th Cir. 2020) ...................................................................12

*Thomas v. City of Richmond,*
    79 U.S. 349 (1870) .....................................................................................16

*Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,*
    444 U.S. 11 (1979) .....................................................................................16

*TransUnion LLC v. Ramirez,*
141 S. Ct. 2190 (2021) ........................................................................ 11, 17, 18

*White v. President, etc. of Franklin Bank,*
39 Mass. 181 (1839)................................................................................ 17

*WildEarth Guardians v. Jewell,*
738 F.3d 298 (D.C. Cir. 2013) .............................................................. 19

**Statutes**

10 U.S.C. § 987 ........................................................................... 1, 2, 7, 10

28 U.S.C. § 1291................................................................................. 2

28 U.S.C. § 1331 ................................................................................. 2

**Other Authorities**

*A Review of the Department of Defense Report on Predatory Lending Practices
Directed at Members of the Armed Forces and Their Dependents: Hearing Before
the Senate Committee on Banking, Housing, and Urban Affairs,* 109th
Congress (2006)................................................................................. 6

Associated Press,
*Debt holds U.S. troops back from overseas duty,* NBC News (Oct. 19, 2006) .................... 5

National Defense Authorization Act for Fiscal Year 2007, H.R. 5122 Roll
Vote No. 510, 109th Congress (Sept. 29, 2006)......................................... 7

President's Statement on H.R. 5122, 42 Weekly Compilation of
Presidential Documents (Oct. 17, 2006) ................................................. 7

*Soldiers as Consumers: Predatory and Unfair Business Practices Harming the
Military Community: Hearing before the Senate Committee on Commerce,
Science, & Transportation,* 113th Congress (2013) ........................................ 5

## INTRODUCTION

Bluegreen Vacations lured newly enlisted Army Private Emmanuel Louis, his wife Tamarah, and their one-year-old child to its resort with promises of an inexpensive vacation. Once there, however, Bluegreen trapped the Louises in an office for nine hours until they finally relented and signed a contract for "membership" in the company's Vacation Club—and a loan to finance that membership. If valid, this loan would cost the Louises more than $25,000 over the course of ten years. But the loan is not valid. It was void from the start because it violates the Military Lending Act—a statute that was passed to protect servicemembers like Private Louis and explicitly states that any loan contract that does not comply with the statute is "void from inception." 10 U.S.C. § 987(f)(3). The Louises filed this lawsuit to rescind the loan and seek restitution of the payment Bluegreen had already collected on it.

Their lawsuit presents a textbook case for Article III standing: The Louises allege that they paid—and, under Bluegreen's loan contract, continue to be obligated to pay—Bluegreen thousands of dollars they do not actually owe. They ask the court to prevent Bluegreen from collecting money from them and require the company to give back the money they already paid. In other words, the Louises allege a classic pocketbook injury, caused by the defendant, that is fully redressable by the relief they seek.

1

The district court, however, held that the Louises lack standing to challenge Bluegreen's loan contract. It is not enough, the court held, that the Louises are concretely harmed by the enforcement of that void contract—in the court's view, they must be harmed by the specific statutory violation that causes the contract to be void. But years of precedent, from both this Court and the Supreme Court, say otherwise. The Supreme Court has explicitly, and repeatedly, held that a plaintiff must allege a concrete harm traceable to *the defendant*—not to the specific statute the defendant violated. The Louises have done so here. This Court, therefore, should reverse.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331 because this case involves a claim under a federal statute, the Military Lending Act, 10 U.S.C. § 987. Doc. 16 at 15–23. This Court has jurisdiction over the appeal under 28 U.S.C. § 1291. The district court entered its order dismissing the case on May 31, 2022. Doc. 52. Mr. Walters timely filed a notice of appeal on June 30, 2022. Doc. 53.[1]

## STATEMENT OF THE ISSUE

Did the district court err in holding that the Louises did not suffer a concrete injury sufficient to support standing, even though they have paid money—and continue to be obligated to pay money—on a contract they allege is void?

# STATEMENT OF THE CASE

## I.     Statutory Background

In 2006, the Department of Defense asked Congress for its help. *See* U.S. Dep't of Def., *Rep. on Predatory Lending Pracs. Directed at Members of the Armed Forces and their Dependents* at 46 (Aug. 2006), https://perma.cc/NAC5-D97H ("Def. Dep't Predatory Lending Report"). Unscrupulous lenders were intentionally targeting service members with predatory loans. *Id.* at 4. The Department explained that military bases are the perfect targets for predatory lending: They have a high concentration of young people "typically without a lot of experience in managing finances," often on their own for the first time "without the guidance or assistance of family," and receiving "perhaps their first significant paycheck." *Id.* at 10. And while these service members are more likely to fall prey to predatory lending, they are also more likely than the civilian population to actually pay their debts. *See id.* Not only are service members "paid regularly" and unlikely to lose or quit their job, the military "explicitly" *requires* them to pay their debts. *Id.* They are, therefore, the ideal mark for predatory lenders.[2]

After a thorough investigation, the Department found that this was precisely what was happening. *Id.* at 21–22. Lenders were concentrating around military bases,

---

[2] Unless otherwise specified, all internal alterations, emphases, quotation marks, and citations are omitted from quotations throughout the brief.

with the goal of "seek[ing] out young and financially inexperienced borrowers who," due to their service, nevertheless "have bank accounts and steady jobs." *Id.* at 21. The loans these companies issued often had high fees or interest rates; "pack[ed] excessive charges into the product" being sold; and were based on "access to assets"—a steady military income or a service member's vehicle—rather than the "ability of the borrower to repay the loan." *Id.* at 22. And the service members the lenders targeted often did "not realize the financial ramifications of using these products" or that there were other options available. *Id.*

The military was concerned that these loans were leaving service members with "enormous debt, family problems, difficulty maintaining personal readiness and a tarnished career." *Id.* at 39. This was a problem not just for the service members themselves but also for the military and the country. Predatory lending, the Department emphasized, not only "harms the morale of troops and their families"; it "undermines military readiness" and "adds to the cost of fielding an all volunteer fighting force." *Id.* at 53; *see also Soldiers as Consumers: Predatory and Unfair Business Practices Harming the Military Community: Hearing before the S. Comm. on Com., Sci., & Transp.*, 113th Cong. (2013) (statement of Hollister Petreaus, Assistant Director, Consumer Fin. Prot. Bureau) (quoting memo to Navy personnel from then-Admiral and Chief of Naval Operations Mike Mullen explaining that a "sailor's financial

4

readiness directly impacts unit readiness and the Navy's ability to accomplish its mission").

A Navy study had found that "financial reasons" accounted for 80% of security-clearance revocations and denials, and that debt-related denials had jumped nearly 850% in just three years. Def. Dep't Predatory Lending Report at 39. Overly indebted service members attempting to solve their financial problems were engaging in conduct that required disciplinary action, up to and including separation from the military. *Id.* at 42–43. And according to news reports during the Iraq War, "[t]housands of U.S. troops [were] being barred from overseas duty because they [were] so deep in debt they [were] considered security risks." *See* Associated Press, *Debt holds U.S. troops back from overseas duty*, NBC News (Oct. 19, 2006), https://perma.cc/VD3F-C9J5. Predatory lending was causing the military a real and "unacceptable loss of valuable talent and resources." Def. Dep't Predatory Lending Report at 87.

The Department of Defense asked Congress to act. *See id.* at 50–53. While the military's own efforts to educate, counsel, and provide mutual aid to service members were important, the Department explained, they were not enough. *Id.* at 46. It requested that Congress pass a statute that would, among other things, require lenders to give service members "unambiguous and uniform price disclosures" with "any extension of credit"; impose "a federal ceiling on the cost of credit to military

borrowers"; and forbid lenders from forcing service members to waive their legal rights, such as the right to go to court. *See id.* at 50–52.

The Department recognized that implementing statutory safeguards would discourage lenders from issuing predatory loans. *See, e.g.*, *id.* at 6. But that was the point: that this kind of credit was not worth the harm it caused. *See id.* at 9. And service members themselves agreed. *See id.* at 43. In a hearing to review the Defense Department's report, Senator after Senator, Republicans and Democrats alike—along with military leadership—spoke about the harm predatory lending was doing to service members, their families, morale, and military readiness. *See, e.g.*, *A Review of the Department of Defense Report on Predatory Lending Practices Directed at Members of the Armed Forces and Their Dependents: Hearing Before the S. Comm. on Banking, Hous., and Urb. Affs.*, 109th Cong. 1 (2006) (remarks of Senator Richard Shelby of Alabama); *id.* at 4 (remarks of Senator Elizabeth Dole of North Carolina) ("[B]latantly targeting our military personnel . . . weakens our military's operational readiness"); *id.* at 6 (remarks of Senator Jack Reed of Rhode Island) ("[T]arget[ing]" these practices "to exploit soldiers is absolutely reprehensible. We owe them a lot more than that.").

Based on this widespread recognition of the need to protect service members from predatory lending, the Military Lending Act was introduced and passed on a bipartisan basis, as an amendment to the National Defense Authorization Act for Fiscal Year 2007. National Defense Authorization Act for Fiscal Year 2007, H.R. 5122: Roll

Vote No. 510, 109th Cong. (Sept. 29, 2006). President George W. Bush signed the statute into law in 2006—the same year the Defense Department had asked for Congress's help. President's Statement on H.R. 5122, 42 Weekly Comp. Pres. Docs. 1836 (Oct. 17, 2006). The statute tracks the Defense Department's request: It caps the interest rate lenders can charge to service members and their families; it requires clear disclosure of the cost of credit; and it forbids lenders from requiring service members to waive their legal rights as a condition of securing a loan. *See* 10 U.S.C. § 987. And it does not merely remedy violations of the statute after the fact; loan contracts that violate the law are "void from inception." *Id.* § 987(f)(3).

## II.    **Factual Background**

### A.    **Bluegreen pressures the Louises to purchase a membership in Bluegreen Vacation Club and to finance that purchase with a loan from Bluegreen.**

Just months after Emmanuel Louis, Jr. joined the army as a private—while he was still in training—Bluegreen Vacations called and offered him a "good deal" on a vacation. Doc. 46–1 at 61. As its name suggests, Bluegreen Vacations is a company that sells vacations. Doc. 16 at 1. But unlike a typical travel company, Bluegreen tries to get people to enter into contracts committing to—and paying for—years of vacations at Bluegreen resorts, with Bluegreen itself financing a loan to pay for it. *See id.* at 1–2, 27. Bluegreen has repeatedly been sued for engaging in "hard sell" tactics— misleading, deceiving, and coercing consumers into entering contracts with the

7

company. *See, e.g.*, Compl., *Miles v. Bluegreen Vacations Unlimited, Inc.*, No. 16-cv-00937 (E.D. Cal. Jun. 28, 2016); *Noblitt v. Bluegreen Vacations Unlimited, Inc.*, 2019 WL 7290474, at *1-*2 (E.D. Tenn. Mar. 20, 2019).

Mr. Louis, however, didn't know any of this when Bluegreen called him up shortly after his enlistment in the army and offered him a discount vacation. So he took the company up on its offer, and Private Louis, his wife Tamarah, and their infant son went to a Bluegreen resort in Florida. Doc. 46-1 at 61–62, 75.[3]

It turns out that the "discount" vacation was not Bluegreen's way of showing support to servicemembers; it was a ruse to get the Louises to its property, so it could pressure them into enrolling in its Vacation Club. *Id.* at 76. The morning after the Louises arrived, Bluegreen required them to attend a sales presentation. *Id.* at 78. And then it trapped them in an office—Emmanuel, Tamarah, and their one-year-old son—for nine hours, without food or breaks, lobbing high-pressure sales tactics at them until they finally relented and signed the papers Bluegreen wanted them to sign. *Id.* at 66, 74, 77–79. As Mr. Louis later put it, "they trick and they trap me" until

---

[3] The district court held that the Louises lack standing on a motion to dismiss. But while the motion to dismiss was being decided, discovery continued in the case. We cite information learned in discovery in the background section to provide the Court a fuller picture of the facts underlying this case. As it must on a motion to dismiss, the standing argument itself depends solely on the allegations of the complaint.

eventually "whatever paper they gave me that day, they would still make me sign it." *Id.* at 66.

The papers Bluegreen made the Louises sign turned out to be a contract to purchase membership in Bluegreen's Vacation Club, financed by a loan from Bluegreen. Doc. 16 at 27–28. The Vacation Club operates through a complicated series of transactions seemingly designed to obscure its true purpose, but, essentially, membership allows the purchaser the option to make a reservation at a Bluegreen vacation property—and provides the purchaser a limited number of Bluegreen "points" they can spend on doing so. *Id.* at 2. In exchange, Bluegreen charged the Louises $11,950.00—including a "down payment" of $1,150.00 and an "administrative fee" of $450.00. *Id.* at 28. To fund the up-front payments, Bluegreen "made" Mr. Louis open a Bluegreen-branded credit card account. Doc. 46–1 at 91, 96. The remaining amount was financed by a loan from Bluegreen. Doc. 16 at 9, 28. That loan obligates the Louises to pay Bluegreen $25,573.60 over ten years. *Id.* at 19.

Not long after the Louises' vacation-turned-high-pressure sales pitch—as soon as Mr. Louis was able to actually read the documents Bluegreen made him sign—he tried to cancel the contract. Doc. 46-1 at 59, 62, 99. Bluegreen refused. *See id.* at 99, 107.

### B.    The Louises sue for rescission of Bluegreen's illegal loan contract and restitution.

Unable to get relief directly from Bluegreen, the Louises sued. They alleged that Bluegreen's loan violates the Military Lending Act in several ways: that Bluegreen misrepresented the interest rate, that it failed to provide the written and oral disclosures the statute requires, and that its contract contained an arbitration clause, which the Military Lending Act explicitly prohibits. *See* Doc. 16 at 17–22. "Any" contract that violates the Military Lending Act is "void from the inception of such contract." 10 U.S.C. § 987(f)(3). The Louises, therefore, do not actually owe Bluegreen any money—and never have. So they sought a declaration that the contract is illegal, rescission of the void contract, restitution of the payment they had made under it, damages, and an injunction to prevent Bluegreen from continuing to harm servicemembers. Doc. 16 at 23–24.

The district court dismissed the complaint based on lack of Article III standing, holding that the Louises had not alleged a concrete harm. *See* Doc. 52 at 1–4. In the district court's view, it was not enough that the Louises were harmed by paying money they do not owe—or that they continue to be obligated to pay tens of thousands of dollars on a contract they allege is void. According to the court, to challenge Bluegreen's contract, the Louises were required to allege harm stemming from the specific *reason* the contract is void—Bluegreen's violations of the Military Lending Act—not just from the enforcement of the contract itself. *Id.* In other words,

10

the district court held that to have standing, a plaintiff must allege not just that the defendant injured them, but that they were injured by the specific statutory violation that renders the defendant's conduct unlawful. *See id.* The court did not address the decades of Supreme Court precedent holding to the contrary. *See, e.g.*, *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021); *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 79 (1978).

## SUMMARY OF ARGUMENT

**I.** Monetary harm is the prototypical "traditional tangible" injury that "readily qualif[ies]" as a concrete harm under Article III. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). That is precisely the harm here: The Louises allege they have paid money—and continue to be obligated to pay money—they do not owe because their loan contract with Bluegreen was void from the start. Courts have long regarded claims for rescission of an illegal contract and restitution to be a valid basis for a lawsuit where either (1) the contract has not yet been fully performed, (2) the plaintiff was less responsible for the illegality than the defendant, or (3) the law the contract violates was enacted to protect people like the plaintiff. All three are true here.

Put simply, the Louises allege a textbook concrete injury and seek relief American courts have always been understood capable of awarding.

**II.** The district court nevertheless dismissed the case because it grafted onto the standing inquiry a requirement the Supreme Court has explicitly rejected. According to the district court, it is not enough for a plaintiff to allege a concrete harm traceable to the defendant; that harm must be traceable to the specific statutory violation that renders the defendant's conduct illegal. But the Supreme Court has repeatedly held otherwise. Binding Supreme Court precedent holds that all that is required for standing is a concrete harm, traceable to the defendant, and redressable by the court. The Louises easily meet all three requirements: They are concretely harmed by having paid, and continuing to be obligated to pay, money they do not owe. That harm is traceable to Bluegreen—the payments are required by Bluegreen's void contract. And it is redressable by the relief they seek, rescission of the contract, restitution, and damages. Nothing more is needed.

## STANDARD OF REVIEW

A district court's order granting a motion to dismiss based on standing is reviewed de novo, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Taylor v. Polhill*, 964 F.3d 975, 979 (11th Cir. 2020).

## ARGUMENT

The "fundamental goal of the standing inquiry" is to "ensur[e] that litigants have a concrete stake in the outcome of the proceedings." *Harris v. Evans*, 20 F.3d 1118,

1123 (11th Cir. 1994). It's hard to imagine a more concrete stake than the $25,500 the Louises will owe if Bluegreen's illegal contract is not invalidated. Nevertheless, the district court held that the Louises lacked standing to bring this suit. It did not dispute that paying money one does not owe is a concrete injury. Instead, it held that this injury is irrelevant. According to the district court, it doesn't matter that the Louises were and continue to be obligated to pay on a void contract; to have standing to challenge that contract, they were required to allege that the *reason* the contract is void—that is, Bluegreen's violation of the Military Lending Act—itself directly harmed them. This view directly conflicts with binding precedent of both this Court and the Supreme Court.

Time and again, this Court and the Supreme Court have explicitly *rejected* the contention that a plaintiff's harm must be connected to the legal provision the defendant allegedly violated. All that is required for standing is a concrete injury, traceable to the *defendant* (not necessarily the defendant's alleged legal violation), that can be redressed by the relief the plaintiff seeks. The Louises easily satisfy these requirements.

## I.    Making payments you do not owe is a textbook concrete injury.

The Louises allege that Bluegreen has collected payment from them based on the company's loan contract, and that they continue to be obligated to pay—tens of thousands of dollars—under the contract. Doc. 16 at 10–11. Because that contract is

13

void, the Louises claim, they do not actually owe, and have never owed, these payments. *See id.*; *see also Dunphy v. Ryan*, 116 U.S. 491, 497 (1886) (no obligation to make payment under a contract that is "void under [a] statute"); *Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 935 (11th Cir. 2021) (void contracts "are of no effect whatsoever").

This classic pocketbook injury—paying money you don't owe—is the "epitome" of concrete harm. *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019); *see Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) ("Certainly, an economic injury qualifies as a concrete injury."). And courts, including this one, have no trouble concluding that a plaintiff that has suffered such harm has standing. *See, e.g., Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017) (citing *McGowan v. Maryland*, 366 U.S. 420 (1961), in which standing was based on a fine of "$5 plus costs"); *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1252 (11th Cir. 2003); *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005) ("The obvious fact that Videon was forced to pay money it otherwise would have kept for itself was sufficient to confer Article III standing.").

In *London*, for example, the Court held that a person who bought insurance had standing to seek restitution of what he paid for it because the insurance contract was void under Florida law. 340 F.3d at 1252. The Court explained that it didn't matter that the contract was void because it lacked legally-required disclosures,

14

which the plaintiff would not have read anyway. *Id.* Payment on a void contract is itself an injury because it's payment of money that is not owed. *See id.*

*London* does not stand alone. This Court has recently reaffirmed this basic understanding. *Hallums v. Infinity Ins. Co.*, 945 F.3d 1144, 1147 (11th Cir. 2019) (citing *London* and holding "[t]he plaintiffs have met the burden of standing by alleging harm in the form of premium payments on illegal policies" (cleaned up)). And other Circuits agree: Payment on a void contract is a concrete injury, and those who have made such payments have standing to challenge them. *See, e.g.*, *Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 574 (2d Cir. 2018) (holding that plaintiffs articulated "a concrete, economic injury: payment of premiums on a void or voidable insurance policy"); *Graham v. Catamaran Health Sols. LLC*, 940 F.3d 401, 408 (8th Cir. 2017) (payment on a void contract constitutes a "compensable economic injury" sufficient for Article III standing); *see also Glob. Aerospace, Inc. v. Platinum Jet Mgmt., LLC*, 488 F. App'x 338, 340 (11th Cir. 2012) (holding that plaintiff had standing to seek a "declaratory judgment that it no longer had any obligation" under an insurance contract, even though it "did not suffer any monetary losses").

This is not a new development. As both this Court and the Supreme Court have recognized, the ability to go to court to rescind a void contract and seek restitution for the payments made under it has long been understood to be "the customary legal incident[]" of voidness. *Transamerica Mortg. Advisors, Inc. (TAMA) v.*

15

*Lewis*, 444 U.S. 11, 18–19 (1979); *Cox v. Cmty. Loans of Am. Inc.*, 625 F. App'x 453, 457 (11th Cir. 2015) (discussing Military Lending Act).

Claims for rescission of a void contract and restitution, therefore, have always been "regarded as providing a basis for a lawsuit" in American courts. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). That includes contracts, like Bluegreen's, that are void because they're illegal. For hundreds of years, American courts—and English courts before them—have invalidated illegal contracts and awarded restitution when either (1) the contract has not yet been fully performed, (2) the plaintiff was less responsible for the illegality than the defendant, or (3) the law the contract violates was enacted to protect people like the plaintiff. *See, e.g., Cong. & Empire Spring Co. v. Knowlton*, 103 U.S. 49, 58–60 (1880) (upholding rescission of illegal contract, and restitution of amounts paid under it, where contract had not yet been fully performed); *St. Louis, V. & T.H.R. Co. v. Terre Haute & I.R. Co.*, 145 U.S. 393, 407 (1892) (courts will grant relief from illegal contract where "the contract remains executory," "the parties are considered not in equal fault," or "the law violated is intended for the coercion of the one party and the protection of the other"); *Thomas v. City of Richmond*, 79 U.S. 349, 355 (1870) (similar, explaining that the rule comes from Lord Mansfield's 1760 decision in *Smith v. Bromley*); *White v. President, etc. of Franklin Bank*, 39 Mass. 181 (1839)

(similar); *McAllister v. Drapeau*, 92 P.2d 911 (Cal. 1939) (similar).[4] All three of these factors are present here.

As the Supreme Court recently held, "[c]entral to assessing concreteness is whether the asserted harm has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S.Ct. at 2200. The Louises' harm here not only bears a "close relationship" to a traditionally recognized harm; it *is* a traditionally recognized harm. Courts have *always* recognized payment on a void contract to be a harm sufficient to invoke judicial power. This Court should do the same.

## II.    A plaintiff must allege harm traceable to the defendant, not to the alleged legal violation.

The district court went astray because it misunderstood the relevant harm. The court believed that the only potentially relevant harm was Bluegreen's failure to provide legally-required disclosures and its unlawful imposition of a forced arbitration clause—harm the district court believed boiled down to mere statutory violations, not concrete injury. *See* Doc. 52 at 2–3. But the Louises do not seek relief

---

[4] To be sure, courts would not afford relief if an illegal contract had already been fully performed, the parties were equally at fault for the illegality, *and* the law violated was not passed for the benefit of one party over the other. *See, e.g., St. Louis, V. & T.H.R. Co. v. Terre Haute & I.R. Co.*, 145 U.S. 393, 408 (1892). But that rule is inapplicable here. And even when federal courts refused relief, they heard the case. *See id.* The refusal to grant relief was on the merits, not because the courts believed there was no case or controversy at all. *See id.*

merely because Bluegreen violated the law; they seek relief because they made—and continue to be obligated to make—payments to Bluegreen that they do not actually owe because Bluegreen's loan contract is void. *See, e.g.*, Doc. 16 at 10–11.

The district court held that this harm was irrelevant. *See* Doc. 52 at 2–3. In the court's view, it didn't matter that the Louises were concretely harmed by Bluegreen collecting payments on a void loan. *See id.* According to the court, the Louises were required to allege an injury specifically caused by the legal violations that rendered the loan void. *See id.* But this Court squarely rejected that argument in *London*. 340 F.3d at 1252. And with good reason: It conflicts with decades of Supreme Court precedent. *See, e.g.*, *Collins*, 141 S. Ct. at 1779; *Duke Power*, 438 U.S. at 79.

As the Supreme Court has made clear over and over again, a plaintiff need only allege harm that is traceable to the *defendant*, "not to the provision of law" the defendant allegedly violated. *Collins*, 141 S. Ct. at 1779; *see TransUnion*,141 S. Ct. at 2203 (plaintiff's harm must be "likely caused by the defendant"). "[P]ut otherwise," plaintiffs must identify a concrete harm that will be "redress[ed]" if their lawsuit were to succeed; that harm, however, need not have any connection to the legal theory upon which the lawsuit is based. *Duke Power*, 438 U.S. at 74; *accord Collins*, 141 S. Ct. at 1779; *Moody v. Holman*, 887 F.3d 1281, 1287 (11th Cir. 2018) ("There is no Article III requirement" that a plaintiff "demonstrate a connection between the injury he claims and the rights being asserted." (cleaned up)); *Chiles v. Thornburgh*, 865 F.2d 1197, 1210

(11th Cir. 1989); *WildEarth Guardians v. Jewell*, 738 F.3d 298, 306–07 (D.C. Cir. 2013); *Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1177 (9th Cir. 2000).

*Duke Power* makes this clear. There, individuals and organizations opposed to the construction of two nuclear power plants sued the utility company responsible for building them, as well as the Nuclear Regulatory Commission. *Duke Power*, 438 U.S. at 69. The plaintiffs' legal claim was that the statute that enabled the power plants' construction violated the Due Process Clause because it capped the liability of privately-owned nuclear power plants for accidents at $560 million—a number the plaintiffs claimed was unconstitutionally arbitrary. *Id.* at 82. But the plaintiffs were not injured by the allegedly arbitrary liability cap. *See id.* They were injured because the nuclear power plants would adversely affect their health and the lakes they used for recreation. *Id.* at 73.[5]

Nevertheless, the Supreme Court held the plaintiffs had standing. The Court forcefully rejected the contention that the plaintiffs were required to demonstrate that they were injured by the statute's liability cap—the alleged legal violation. *Id.* at 78–79. Outside the context of taxpayer lawsuits, the Court explained, no case has ever "demanded this type of subject-matter nexus between the right asserted and the

_____

[5] Although the district court in *Duke Power* had identified the possibility of a reactor accident as a potential harm, the Supreme Court did not consider that harm as a basis for standing, resting its decision solely on the environmental, aesthetic, and health consequences of the plant's operation—consequences upon which the liability cap had no bearing. *Duke Power*, 438 U.S. at 73–74.

injury alleged." *Id.* at 79. All a plaintiff must show, the Court held, is "injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury." *Id.* Because the plaintiffs had (1) shown a concrete injury (the adverse effects caused by the power plants) that (2) would be redressed by a favorable decision (the power plants likely would not be constructed), they had standing. *Id.* at 76, 79.

The same is true here. The Louises have shown a concrete injury—payment of money they do not owe. And the relief they request would remedy that harm: Bluegreen will be prohibited from collecting on the loan, return the payments it never should have gotten in the first place, and pay damages. That's all standing requires. The district court's conclusion to the contrary cannot be squared with the clear rule the Supreme Court has established. This Court should reverse.

## CONCLUSION

This Court should reverse.

Respectfully submitted,

*/s/ Jennifer D. Bennett*
JENNIFER D. BENNETT
GUPTA WESSLER PLLC
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 573-0336
*jennifer@guptawessler.com*

MATTHEW W.H. WESSLER
GUPTA WESSLER PLLC

20

2001 K Street NW, Suite 850 North
Washington, DC 20006
(202) 888-1741

JANET R. VARNELL
BRIAN W. WARWICK
MATTHEW T. PETERSON
ERIKA R. WILLIS
VARNELL & WARWICK, P.A.
1101 E Cumberland Ave, Suite 201H
Tampa, FL 33602
(353) 753-8600

IRA RHEINGOLD
NATIONAL ASSOCIATION OF
CONSUMER ADVOCATES
1215 17th Street NW, 5th Floor
Washington, DC 20036
(202) 452-1989

November 14, 2022                    *Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 4,980 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this reply brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

*/s/ Jennifer D. Bennett*
Jennifer D. Bennett

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2022, I electronically filed the foregoing brief with the Clerk of the Court of the U.S. Court of Appeals for the Eleventh Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

/s/ Jennifer D. Bennett
Jennifer D. Bennett