**No. 22-12217**

# In the United States Court of Appeals for the Eleventh Circuit

―――――――――――――――

TAMARAH C. LOUIS and EMMANUEL LOUIS, JR., individually, and on
behalf of all others similarly situated,
*Plaintiffs-Appellants,*

v.

BLUEGREEN VACATIONS UNLIMITED, INC., a Florida corporation and
BLUEGREEN VACATIONS CORPORATION, a Florida corporation,
*Defendants-Appellees.*

―――――――――――――――

On Appeal from the United States District Court
for the Southern District of Florida
Case No. 21-cv-61938 (The Hon. Rodolfo A. Ruiz II)

―――――――――――――――

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

―――――――――――――――

JANET R. VARNELL
BRIAN W. WARWICK
MATTHEW T. PETERSON
ERIKA R. WILLIS
VARNELL & WARWICK, P.A.
1101 E. Cumberland Ave, Suite 201H
Tampa, FL 33602
(352) 753-8600

IRA RHEINGOLD
NATIONAL ASSOCIATION OF
CONSUMER ADVOCATES
1215 17th Street NW, 5th Floor
Washington, DC 20036
(202) 452-1989

JENNIFER D. BENNETT
GUPTA WESSLER PLLC
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 573-0336
*jennifer@guptawessler.com*

MATTHEW W.H. WESSLER
GUPTA WESSLER PLLC
2001 K Street NW, Suite 850 North
Washington, DC 20006
(202) 888-1741

April 19, 2023                    *Counsel for Plaintiffs-Appellants*

Case No. 22-12217; Louis v. Bluegreen

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26(b) and Eleventh Circuit Rule 26.1, Appellants hereby disclose the following list of known persons, associated persons, firms, partnerships, or corporations that have a financial interest in the outcome of this case, including all subsidiaries, conglomerates, affiliates, parent corporations, and other identifiable legal entities related to a party in this case:

Bennett, Jennifer D.

Bluegreen Vacations Corporation

Bluegreen Vacations Unlimited, Inc.

Gupta Wessler PLLC

Louis, Jr., Emmanuel G.

Louis, Tamarah C.

Mead, Grace L.

Nathan, Andrea N.

National Association of Consumer Advocates

Onorati, Joseph J.

Peterson, Matthew T.

Rheingold, Ira

Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.

Varnell & Warwick, P.A

Case No. 22-12217; Louis v. Bluegreen

Varnell, Janet R.

Warwick, Brian W.

Wessler, Matthew W.H.

Willis, Erika R.

Bluegreen Vacations Unlimited, Inc. is a wholly owned subsidiary of Bluegreen Vacations Corporation. Bluegreen Vacations Holding Corporation, a publicly held corporation trading on the New York Stock Exchange under the symbol "BVH," owns over 10% of the stock of Bluegreen Vacations Corporation.

Dated: April 19, 2023                                    */s/ Jennifer D. Bennett*
                                                         Jennifer D. Bennett

# **TABLE OF CONTENTS**

Table of citations ........................................................................... ii

Introduction ................................................................................... 1

Argument ....................................................................................... 2

I.    The Louises have standing ...................................................... 2

    A.    The Louises' payment of money they do not owe, and their
        continued obligation to do so, are concrete injuries............................ 2

    B.    The Louises' injuries are traceable to Bluegreen's collecting
        money from them that they do not owe, and are redressable by
        rescinding the void contract and returning the Louises' money ......... 6

    C.    Bluegreen's policy arguments are misplaced and, in any event,
        cannot overcome Supreme Court precedent ...................................... 10

II.   This Court should remand to the district court to decide the scope of
    the Military Lending Act ................................................................. 11

Conclusion ....................................................................................13

# TABLE OF CITATIONS

## Cases

*Collins v. Yellen,*
  141 S. Ct. 1761 (2021) ........................................................................8, 9

*Compulife Software Inc. v. Newman,*
  959 F.3d 1288 (11th Cir. 2020).......................................................... 11

*Culverhouse v. Paulson & Co. Inc.,*
  813 F.3d 991 (11th Cir. 2016)...............................................................5

*Douglass v. Kavanaugh,*
  90 F. 373 (6th Cir. 1898) ...................................................................... 3

*Duke Power Co. v. Carolina Enviromental Study Group,*
  438 U.S. 59 (1978)................................................................................ 8

*Georgia Association of Latino Elected Officials, Inc. v. Gwinnett County Board of*
  *Registration & Elections,*
  36 F.4th 1100 (11th Cir. 2022)..............................................................5

*Hallums v. Infinity Insurance Co.,*
  945 F.3d 1144 (11th Cir. 2019)............................................................ 4

*London v. Wal-Mart Stores, Inc.,*
  340 F.3d 1246 (11th Cir. 2003) ........................................................... 4

*Moody v. Holman,*
  887 F.3d 1281 (11th Cir. 2018) ........................................................5, 7

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016)........................................................................... 1, 3

*Sprint Communications Co., L.P. v. APCC Services, Inc.,*
  554 U.S. 269 (2008)...........................................................................5, 6

*Steines v. Westgate Palace, L.L.C.,*
  2022 WL 18031492 (M.D. Fla. Dec. 14, 2022) ............................................12

*TransUnion LLC v. Ramirez,*
  141 S. Ct. 2190 (2021) .......................................................................... 3

*United States v. Mortgage Investors Corporation,*
   987 F.3d 1340 (11th Cir. 2021) ...................................................................3, 4

*United States v. Ross,*
   963 F.3d 1056 (11th Cir. 2020) .......................................................................5

*Walters v. Fast AC, LLC,*
   60 F.4th 642 (11th Cir. 2023) .................................................................. 9, 10

## Statutes

10 U.S.C. § 987 ..............................................................................................5

## Regulations

32 C.F.R. § 232.3 .........................................................................................12

## Other Authorities

1 Williston on Contracts (4th ed. 2022) .......................................................2

2 Addison on Contracts (8th ed. 1888) .................................................... 3

## INTRODUCTION

Bluegreen spends most of its brief criticizing an argument we did not make. Over and over again, the company complains that a bare procedural violation of a statute cannot confer Article III standing. But the Louises have never argued otherwise. The basis for the Louises' standing is not some procedural violation. It's that Bluegreen took their money and refuses to give it back. As explained in the opening brief, that's a textbook example of standing. The Louises have a concrete injury (lost money) traceable to Bluegreen's conduct (Bluegreen took it from them) and redressable by the remedies they seek (refunding the money and preventing Bluegreen from trying to collect more).

Bluegreen concedes that American courts—and English courts before them—have been hearing cases just like this one for hundreds of years. That's dispositive here. "Standing doctrine limits the judicial power to cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 343 (2016). And there's no dispute that this lawsuit is precisely the kind of case that has been long understood as "traditionally amenable" to resolution in American courts.

Unable to argue otherwise, Bluegreen insists that's not enough—that there must also be a nexus between a plaintiff's injury and the specific provision of law the defendant allegedly violated. But both this Court and the Supreme Court have

repeatedly rejected that argument. All that's necessary, the Supreme Court has emphasized, is a concrete injury, traceable to the defendant's conduct and redressable by the court. The Louises easily satisfy these requirements. They therefore have standing.

## ARGUMENT

## I.    The Louises have standing.

### A.    The Louises' payment of money they do not owe, and their continued obligation to do so, are concrete injuries.

Most of Bluegreen's argument is devoted to contending that a bare procedural violation of a statute does not constitute a concrete injury. But the Louises do not contend otherwise. The Louises' injury is not merely that Bluegreen violated the Military Lending Act. Their injury is that they paid money they never actually owed, because the contract Bluegreen relied on to collect that money is void. In other words, Bluegreen took money from the Louises the company had no right to take and refuses to give it back. *See* 1 Williston on Contracts § 1:20 (4th ed. 2022) ("When a bargain is void, it is as if it never existed," and it "creates no legal obligation."). Worse, the company continues to demand that the Louises pay even more money. Paying money one does not owe is a classic pocketbook injury. *See* Opening Br. 14.[1]

---

[1] Unless otherwise specified, internal quotation marks, citations, and alterations are omitted throughout the brief.

When Bluegreen finally turns to *that* injury—the Louises' actual basis for standing—it has almost nothing to say. Bluegreen does not even try to dispute that claims for rescission of a void contract and restitution of payments already made have always been "regarded as providing a basis for a lawsuit" in American courts. *Spokeo*, 578 U.S. at 341. The company says nothing at all about the hundreds of years of precedent in which American courts, and English courts before them, "recognized" claims just like the Louises' here. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021); *see* Opening Br. 16–17.[2] That, alone, is dispositive. Even the narrowest understanding of what constitutes concrete injury includes those harms that have "traditionally" been "recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2200; *accord Spokeo*, 578 U.S. at 341.

Perplexingly, Bluegreen asserts (at 30) that this argument conflicts with *Spokeo*. But this is exactly what *Spokeo* itself says. *See, e.g.,* 578 U.S. at 343 ("Standing doctrine limits the 'judicial power' to 'cases and controversies' of the sort *traditionally amenable to, and resolved by*, the judicial process." (emphasis added)). In arguing otherwise, Bluegreen relies on this Court's decision in *United States v. Mortgage Investors Corporation*, 987 F.3d 1340 (11th Cir. 2021), but that decision offers no support for the company's

---

[2] *See also, e.g.*, 2 Addison on Contracts 600–601 (8th ed. 1888) (explaining that where an illegal contract has not been fully executed or where the parties are not equally at fault for the illegality, the law "implies a promise to refund money received under an illegal contract" and the person who paid the money may "bring an action . . . to refund it"); *Douglass v. Kavanaugh*, 90 F. 373, 377 (6th Cir. 1898) (collecting cases).

position. The plaintiffs in *Mortgage Investors* were relators under the False Claims Act, so they did not bring claims of their own but instead were prosecuting claims on behalf of the government. *See id.* at 1343. Because the basis of relator standing is the government's assignment of claims, the Court held that the relators did not have standing to prosecute state-law claims on behalf of the government if the government did not assign those claims. *See id.*

It's not at all clear what relevance Bluegreen believes that decision has here—besides that both cases involve the word "void." (In *Mortgage Investors*, the relators tried to bring a claim under Georgia's Uniform Voidable Transfers Act.) But unlike the relators in *Mortgage Investors*, the Louises are not trying to prosecute someone else's claims. It is the Louises themselves that paid money they did not owe, and the Louises themselves that are seeking to get it back. Again, that is a paradigmatic concrete injury that gives rise to standing. *See* Opening Br. 14.

Indeed, as Bluegreen itself recognizes, this Court has already held that a plaintiff who seeks restitution of money paid under a void contract has standing to do so. *See London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1252 (11th Cir. 2003). And the Court has reaffirmed that principle since *Spokeo*. *See Hallums v. Infinity Ins. Co.*, 945 F.3d 1144, 1147 (11th Cir. 2019). Bluegreen says nothing at all about *Hallums*. And while it does argue (at 18–19) that this Court should disregard *London*, the only justification it offers is that the defendant in *London* conceded that its disclosures violated the law,

whereas here Bluegreen has not conceded its statutory violations.[3] That argument, however, "conflate[s]" standing with the merits. *Moody v. Holman*, 887 F.3d 1281, 1287 (11th Cir. 2018).

The purpose of standing is to ensure that a dispute will be "presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process"—not to determine whether the plaintiff will win on the merits. *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 274, (2008). In evaluating standing, therefore, courts "must . . . assume that on the merits the plaintiffs would be successful in their claims." *Culverhouse v. Paulson & Co. Inc.*, 813 F.3d 991, 994 (11th Cir. 2016); *see also United States v. Ross*, 963 F.3d 1056, 1063 (11th Cir. 2020) (emphasizing the "Supreme Court's directive that courts should avoid 'jurisdictionalizing' issues that are more properly characterized as . . . aspects of a party's merits case"); *Georgia Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1113 (11th Cir. 2022) ("[I]f a jurisdictional challenge implicates the merits of the underlying claim, . . . the proper course of action for the district court is to find that

---

[3] In making this argument and throughout its brief, Bluegreen is careful not to actually state that it complied with the Military Lending Act. That's because the company is well aware that it did not do so: Whatever the merits of its written disclosure argument, the company does not dispute that it failed to provide any oral disclosures or that its contract includes a forced arbitration provision. *See* Doc. 16, at 8, 10. Nor does it dispute that both of these violate the Military Lending Act. 10 U.S.C. §§ 987(c), (e)(3).

jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." (cleaned up)).

Here, therefore, this Court must assume that Bluegreen violated the Military Lending Act and that the contract under which Bluegreen took money from the Louises—and refuses to return it—is, in fact, void.[4] Under that assumption, there's no dispute that this case is "presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Sprint*, 554 U.S. at 274. Again, Bluegreen concedes that courts have been resolving cases seeking rescission of a void contract and restitution—that is, cases just like this one—for hundreds of years.

## B. The Louises' injuries are traceable to Bluegreen's collecting money from them that they do not owe, and are redressable by rescinding the void contract and returning the Louises' money.

Bluegreen does not dispute that its actions caused the Louises' injuries. Nor could it. The Louises paid money they didn't actually owe because Bluegreen collected it from them, based on a void contract Bluegreen issued, and now Bluegreen refuses to return the money. Nor does Bluegreen dispute that the Louises'

---

[4] Bluegreen asserts (at 28–29) that the Louises' allegations that the company violated the Military Lending Act are conclusory. They are not. The Louises specifically allege that Bluegreen failed to provide anywhere in its written documents the Military Annual Percentage Rate of the loan, that it misstated the loan's interest rate, that it failed to provide oral disclosures, and that its loan requires forced arbitration. Doc. 16, at 9, 16.

injuries can be redressed by the relief they seek: a return of their money and rescission of Bluegreen's void contract so that the company can no longer purport to collect on it. Instead, Bluegreen argues (at 32–33) that's not enough. According to the company, the Louises must also allege some nexus between their injuries and the specific legal violations that render Bluegreen's contract void.

Bluegreen is mistaken. As the opening brief explained (at 17–20), this Court and the Supreme Court have rejected that argument—repeatedly. Decades of precedent hold that standing requires nothing more than that a plaintiff's concrete injury be traceable to the defendant's conduct, not some third party, and redressable by the remedies the plaintiff seeks. *See* Opening Br. 17–20 (citing cases). "There is no Article III requirement that" plaintiffs "demonstrate a connection between the injury [they] claim" and the specific legal violations "being asserted." *Moody v. Holman*, 887 F.3d 1281, 1287 (11th Cir. 2018) (cleaned up).[5]

That's why the Supreme Court held that the plaintiffs in *Duke Power* had standing, even though their asserted injury (that a nuclear power plant would harm their health and the environment they enjoyed) had nothing to do with the reason

---

[5] There are many cases in which a defendant isn't even alleged to have violated the law. Take, for example, a breach of contract case, brought in federal court under diversity jurisdiction. If the only claim is that the defendant did not adhere to its contractual obligations, the defendant's conduct is not unlawful at all. And so the plaintiff couldn't possibly allege a nexus between their injury and a specific legal violation. But that doesn't mean the plaintiff lacks standing.

they alleged the power plant could not be built (because its authorizing statute unconstitutionally limited liability). *Duke Power Co. v. Carolina Env't Study Grp.*, 438 U.S. 59, 74 (1978). No such connection was necessary. To "satisfy the 'case or controversy' requirement of Art. III," a plaintiff need not demonstrate anything "more than injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury." *Id.* at 79.

That decision is controlling here. It is enough that the injuries caused by Bluegreen's enforcement of a void contract are concrete and will be redressed by the judicial relief the Louises seek. They need not demonstrate a nexus between their injuries and the reason Bluegreen's contract is void.

Bluegreen all but ignores *Duke Power* and the decades of caselaw reaffirming it. Instead, seizing on a single stray word, Bluegreen argues (at 33) that the Supreme Court's decision in *Collins v. Yellen* demonstrates that plaintiffs must allege a nexus between injury and illegality. But *Collins* holds precisely the opposite. The plaintiffs in *Collins* were shareholders of Fannie Mae and Freddie Mac, who challenged an agreement between the Federal Housing Financing Agency and the Treasury Department that they alleged transferred the companies' wealth to the government. *Collins v. Yellen*, 141 S. Ct. 1761, 1770 (2021). The shareholders' injury was monetary— the value of their property interest in the companies was transferred to the Treasury Department. *Id.* at 1779. But that's not the reason the agreement was unenforceable.

8

The agreement was unenforceable, they contended, because the head of the Federal Housing Financing Agency was unconstitutionally appointed. *See id.*

The Supreme Court *rejected* the assertion that the shareholders lacked standing because there was no connection between the shareholders' injury and the agency's alleged constitutional violation. *Id.* The shareholders were concretely injured by the agency's agreement, and their injury would be redressed by invalidating that agreement and returning the payments made under it. That, the Court held, was enough. *See id.*

Bluegreen fares no better trying to seek refuge in this Court's recent decision in *Walters v. Fast AC, LLC*, 60 F.4th 642 (11th Cir. 2023). That decision does not (and could not) require a nexus between injury and illegality that the Supreme Court has repeatedly rejected. *Walters* merely reiterated the longstanding principle that standing "requires that the plaintiff's injuries be fairly traceable to the challenged action of the *defendant*, and not the result of the independent action of some third party not before the court." *Id.* at 650 (emphasis added). The plaintiff in *Walters* alleged that he was misled into taking out a loan he could not afford because the true price of the loan was not disclosed to him. *Id.* at 651. He alleged both that the lender's loan paperwork was deficient and that a salesperson prevented him from seeing that paperwork in the first place. *Id.* Under those circumstances, the Court held that the plaintiff's injury—an uninformed loan decision—was not traceable to

the lender that issued the loan paperwork, except to the extent that the salesperson was its agent, because any deficiencies in the paperwork were irrelevant; the plaintiff never saw it. *See id.* And so his uninformed decision was traceable solely to a third party: the salesperson. *See id.*

That is not the case here. Bluegreen can't argue that the Louises' injuries are someone else's fault. Bluegreen's confusion about the relevance of *Walters* seems to be rooted in confusion about the basis for the Louises' standing. Unlike the plaintiff in *Walters*, the Louises need not argue that Bluegreen's nondisclosure itself injured them. It doesn't matter, therefore, whether they read Bluegreen's paperwork. The Louises' injury is that they paid money they do not owe and that Bluegreen purports to continue to require them to do so. There's no dispute that this injury is traceable to Bluegreen and can be redressed by a favorable decision here. Nothing more is required.

### C. Bluegreen's policy arguments are misplaced and, in any event, cannot overcome Supreme Court precedent.

As explained above and in the opening brief, binding Supreme Court precedent is dispositive here. Suits for rescission of void contracts and restitution of payments already made are precisely the kind of cases historically understood to be amenable to the judicial process. And so under the Supreme Court's decisions in *TransUnion*, *Spokeo*, and *Duke Power*, the Louises have standing to bring their claims.

Bluegreen complains that its contract is not the kind of agreement Congress intended to foreclose in passing the Military Lending Act. But the text of the statute says otherwise. The statute provides that a loan that's made without proper written—*and oral*—disclosures, that forces servicemembers to waive their rights, or that prevents servicemembers from bringing claims in court is no loan at all; it is void from inception. If Bluegreen believes that Congress secretly intended to void fewer contracts than the statute's text provides, the company should ask Congress to amend the statute. And, even if Bluegreen were right, that would mean that the Louises' claims fail on the merits; it wouldn't mean they lack standing to pursue them.

## II.    This Court should remand to the district court to decide the scope of the Military Lending Act.

Falling back, Bluegreen asks this Court to affirm on entirely different grounds: According to Bluegreen (at 36–38), the Louises' claims fail on the merits because the company's vacation loan is, in fact, somehow a residential mortgage, exempt from the Military Lending Act. But the district court never decided this issue. And this Court is "a court of review, not a court of first view." *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1307 (11th Cir. 2020). This Court, therefore, should remand the case to the district court to consider the issue in the first instance.

In any event, Bluegreen is wrong. The residential mortgage exemption applies to loans secured by an "interest" in a "residential structure that contains one to four

units." 32 C.F.R. §§ 232.3(f)(2)(i), (k). At most, the "interest" the company purported to convey to the Louises is the ability to stay in a unit of the company's World Golf Village vacation resort for one week once every other year, if the Louises save up enough Bluegreen "vacation points" and book a year in advance. *See* Doc. 16, at 27; Doc. 46-5, at 73–76; Doc. 46-13, at 71. That's not an interest in the "structure"—that is, the property itself. It's the right to potentially book a vacation there. Nobody would say the Louises had an interest in a Hilton hotel, even if the chain gave them the ability to occasionally book a specific room. And it's certainly not an interest in a "*residential* structure," 32 C.F.R. § 232.3(k) (emphasis added). Although Bluegreen calls the rooms at its vacation resorts "condominiums," it does not even try to suggest that they are in fact residences. *Cf. Steines v. Westgate Palace, L.L.C.*, 2022 WL 18031492, at *7 (M.D. Fla. Dec. 14, 2022) (interpreting the same exemption and explaining that the ordinary meaning of "residential structure" is a residence, or home, and that timeshare vacation resorts do not count). This Court need not reach the issue, but if it does, it should reject Bluegreen's assertion that it can coerce servicemembers into signing a vacation loan and then escape the Military Lending Act, simply by calling its loan a mortgage.[6]

---

[6] Bluegreen's conclusory assertion (at 38) that if its vacation loan is not a mortgage, it would be an exempt "personal property" loan is equally meritless. Bluegreen does not even attempt to explain how a vacation is personal property. And, in any event, the company did not make this claim below, so it is forfeited.

## CONCLUSION

This Court should reverse.

Respectfully submitted,

/s/ Jennifer D. Bennett
JENNIFER D. BENNETT
GUPTA WESSLER PLLC
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 573-0336
jennifer@guptawessler.com

MATTHEW W.H. WESSLER
GUPTA WESSLER PLLC
2001 K Street NW, Suite 850 North
Washington, DC 20006
(202) 888-1741

JANET R. VARNELL
BRIAN W. WARWICK
MATTHEW T. PETERSON
ERIKA R. WILLIS
VARNELL & WARWICK, P.A.
1101 E. Cumberland Ave, Suite 201H
Tampa, FL 33602
(353) 753-8600

IRA RHEINGOLD
NATIONAL ASSOCIATION OF
CONSUMER ADVOCATES
1215 17th Street NW, 5th Floor
Washington, DC 20036
(202) 452-1989

April 19, 2023                    *Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 3,156 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this reply brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

*/s/ Jennifer D. Bennett*
Jennifer D. Bennett

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2023, I electronically filed the foregoing brief with the Clerk of the Court of the U.S. Court of Appeals for the Eleventh Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Jennifer D. Bennett*
Jennifer D. Bennett